FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT. E.D.N.Y.
★ JUN 0 1 2006 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

EMILIO RAMOS,

                Petitioner.

-against-

UNITED STATES OF AMERICA,

                Respondent.

------------------------------------------------------------ X

05 CV 4870 (ARR)

NOT FOR ELECTRONIC
OR PRINT
PUBLICATION

OPINION
AND ORDER

ROSS, United States District Judge:

The petitioner Emilio Ramos ("petitioner" or "Ramos"), proceeding pro se, filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 on October 6, 2005. Petitioner claims that (1) the admission of a letter written to his probation officer violated his Fifth Amendment privilege against self-incrimination and the failure to hold a hearing on the voluntariness of the statement violated his right to due process and (2) he received ineffective assistance of counsel at the suppression hearing and the trial. For the reasons stated below, the petition for a writ of habeas corpus is denied.

## BACKGROUND

On December 12, 2000, two New York City Police Detectives, who were sitting in an unmarked vehicle on Whitney Avenue waiting to begin a "buy and bust" operation, observed a white Nissan parked one or two car distances away. Four individuals, including petitioner, were in the vehicle. The detectives then observed petitioner and another individual leaving the vehicle. Detective Shawn Johnson then noticed plastic wrist restraints, also called "flex cuffs,"

1

protruding from petitioner's jacket. In addition, he observed the other individual wearing a Federal Express jacket and carrying a box, although he did not come from a Federal Express vehicle nor was there such a vehicle in the vicinity.

Based on his training and experience, Detective Johnson testified that the disguise as a uniformed deliveryman to gain access to homes and the use of flex cuffs to restrain potential victims were consistent with the behavior pattern of push-in robberies. After petitioner and the other individual returned the Nissan, Detective Johnson called for back-up, approached the vehicle with his gun pointed toward the ground, and identified himself as a police officer. When the four individuals emerged from the car, Detective Johnson asked petitioner whether he was carrying a weapon and petitioner answered affirmatively. Detective Johnson retrieved the gun from petitioner's waistband.

Petitioner moved to suppress the gun. The court denied his motion after a hearing. Petitioner was convicted on October 1, 2002 of possessing a firearm after having previously been convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). He was sentenced on August 7, 2003 to 57 months of imprisonment, three years of supervised release, and a $100 special assessment. He appealed to the Second Circuit, challenging the denial of his motion to suppress the handgun found by police during the stop and frisk and arguing that the district court's determination that reasonable suspicion existed was based on clearly erroneous factual findings. He also argued that his prosecution and conviction under 18 U.S.C. § 922(g)(1) violated the Commerce Clause. The Second Circuit affirmed the judgment of the district court. United States v. Ramos, No. 03-1515, 112 Fed. Appx. 99, 2004 WL 2293424 (2d Cir. October 8, 2004). Petitioner's conviction became final on approximately January 6, 2005, 90 days after the

Second Circuit affirmed his conviction. Petitioner thereafter timely filed the instant habeas petition on October 6, 2005, within the one-year statute of limitations.[1]

## DISCUSSION

### A. Fifth Amendment Privilege Claim

Petitioner argues that the admission of his letter to his probation officer into evidence violated his Fifth Amendment privilege against self-incrimination. Specifically, petitioner claims that he was allegedly compelled under the terms of his probation for a previous conviction to truthfully disclose the circumstances surrounding the offense underlying the instant offense. In addition, he claims that the court's failure to hold a hearing on the voluntariness of the letter violated his due process rights.[2]

"Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence." Miranda v. Arizona, 384 U.S. 436, 478 (1966). In Minnesota v. Murphy, the Supreme Court held that a probationer's general obligation to report to his probation

---

[1] Petitioner also asks this court to reconsider its opinion and order dated April 19, 2006, which denied as untimely petitioner's request to supplement his petition with an additional claim of ineffective assistance of counsel. Petitioner argues that his motion to supplement his petition should have been granted because it is allegedly based on new facts that could not have been discovered previously. The court disagrees. Petitioner's claim that his trial counsel failed to adequately investigate an allegedly unconstitutional state program that allows state prosecutors to divert gun prosecutions to federal court does not rely on any new facts. The state program apparently existed at the time of petitioner's arrest. Thus, petitioner cannot argue that the supplemental claim is based on new facts that could not have been discovered previously. Consequently, the court will not reconsider its April 19, 2006 decision denying petitioner's motion to supplement his petition.

[2] Respondent has failed to argue that these claims are procedurally barred for failure to raise them on direct appeal and, thus, has waived the defense. United States v. Canady, 126 F.3d 352, 360 (2d Cir. 1997) (holding that the government waived the procedural default defense by failing to raise it in the district court and, therefore, declining to consider the procedural default defense on appeal). Consequently, the court will address petitioner's claims on the merits.

3

officer and be truthful does not render the probationer's incriminating statements compelled self-incrimination within the meaning of the Fifth Amendment. 465 U.S. 420, 431 (1984). Like any witness, the probationer must timely assert his Fifth Amendment privilege, or his statements will be deemed voluntary and admissible. Id. at 440.

In Murphy, however, the Court also recognized that the Fifth Amendment privilege may be self-executing and, thus, need not be expressly invoked in the context of probation

> if the state, either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation, it would have created the classic penalty situation, the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution.

Id. at 435. The Court further explained that in order for the court to determine whether the probationer was subject to the penalty situation, the court

> must inquire whether [the] probation conditions merely required him to appear and give testimony about matters relevant to his probationary status or whether they went farther and required him to choose between making incriminating statements and jeopardizing his conditional liberty by remaining silent.

Id. at 436. With respect to the specific facts in Murphy, the defendant probationer was informed that "he was required to be truthful with his probation officer in all matters and that failure to do so could result in revocation of probation." Id. at 437. The Court noted that his probation terms "said nothing about his freedom to decline to answer particular questions and certainly contained no suggestion that his probation was conditional on his waiving his Fifth Amendment privilege with respect to further criminal prosecution." Id. Consequently, the Court concluded that "if Murphy did harbor a belief that his probation might be revoked for exercising the Fifth Amendment privilege, that belief would not have been reasonable." Id. at 438.

4

At petitioner's trial, the government introduced a redacted letter written by petitioner to his probation officer, Charles Dotson, acknowledging that he had been arrested for possession of a firearm and that he had "messed up bad." (See Pet. Mem. Ex. A. at 1.) Petitioner claims that he was compelled by the terms of his supervised release for a prior conviction to inform his probation officer of the facts and circumstances surrounding any later arrests. However, the record demonstrates that the terms of petitioner's probation included no such requirement.[3] At most, petitioner was required to inform Mr. Dotson of the fact of his arrest. The terms of his probation in no way indicated that he had to disclose any information about the facts and circumstances of his arrest, much less admit his guilt, as petitioner did in the letter at issue. In addition, nothing in the record shows that Mr. Dotson made any inquiries to petitioner regarding his arrest. Petitioner himself fails to even allege that he was responding to specific inquires from Mr. Dotson that he felt compelled to answer. The letter itself suggests that petitioner had not been in touch with Mr. Dotson, either by phone or letter. In the letter, petitioner explains that he had been unable to call Mr. Dotson due to lack of funds and assumed that Mr. Dotson had heard about petitioner's arrest already. (Id.) Thus, there is simply nothing in the record indicating that petitioner was asked to disclose any incriminating evidence other than the fact of his arrest. Instead, the record shows that petitioner voluntarily provided detailed information about the

---

[3] Petitioner explains that "[t]he specific condition of his probation, violation of which would cause Defendant's probation to be revoked, included:
    '(1) The defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer; and
    (2) The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer; and
    (3) The defendant shall submit a truthful and complete written report with the first five days of each month.'"
(Pet. Mem. at 10.)

circumstances of his arrest to his probation officer.

Petitioner's case is therefore indistinguishable from Murphy. While the condition of petitioner's probation required him to truthfully report to his probation officer, it did not compel him to forfeit his Fifth Amendment privilege against self-incrimination. Given that the terms of his probation merely required petitioner to disclose the fact of his arrest to his probation officer and there is no evidence or allegation that his probation officer sought more information about the arrest, the court "cannot conclude that [petitioner] was deterred from claiming the privilege by a reasonably perceived threat of revocation." Murphy, 465 U.S. at 439. Thus, habeas relief is not warranted on petitioner's Fifth Amendment privilege claim. In addition, because petitioner has failed to put forth any issues of fact regarding the voluntariness of his letter, the court concludes that no hearing was required and, thus, petitioner's due process claim is meritless.

B.  **Ineffective Assistance Claims**

Petitioner claims that his counsel was ineffective for (1) failing to call Alcohol, Tobacco, and Firearms ("ATF") Agent Justin Meyer, eyewitness Ping Cen, and several other witnesses to the stand to impeach Detective Johnson's testimony at the suppression hearing, and (2) failing to challenge the admissibility of petitioner's letter to his probation officer on the grounds that it violated his Fifth Amendment privilege against self-incrimination.

A petitioner seeking to attack his conviction based on ineffective assistance of counsel must: (1) show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms," and (2) demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687-89 (1984).

In analyzing a claim that counsel's performance fell short of constitutional standards, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. As explained by the Supreme Court,

> strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.

Id. 690-91. Moreover, "[i]n assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct, and may not use hindsight to second-guess his strategy choices.'" Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (quoting Strickland, 466 U.S. at 690). Thus, a petitioner cannot prevail on a claim of ineffective assistance merely because he disagrees with his counsel's strategy. See Strickland, 466 U.S. at 689.

1. Failure to Call Additional Witnesses at Suppression Hearing

Petitioner's argues that his counsel at the suppression hearing, Neil Checkman, failed to call several witnesses to the stand to impeach Detective Johnson's credibility. Specifically, petitioner argues that Mr. Checkman failed to call ATF Agent Meyer, who had noted in his report that Detective Johnson had told him that the flex cuffs were in petitioner's pocket not in his jacket, as Detective Johnson later testified to at the hearing. While petitioner is correct that Agent Meyer was never called to testify at the suppression hearing, Mr. Checkman did in fact use his report to impeach Detective Johnson on cross-examination. Mr. Checkman questioned Detective Johnson in detail concerning the differences between his testimony at the hearing and the statements he made to Agent Meyer earlier. (Hr'g Tr. 59-68.) On cross-examination,

7

Detective Johnson admitted that he would not have been able to see that petitioner had interior pockets in his jacket prior to taking him into custody, but maintained that he did observe the flex cuffs protruding from the lapel of petitioner's jacket. (Hr'g Tr. 62-63.) Moreover, Mr. Checkman vehemently argued that Detective Johnson's testimony was not credible because his earlier statement to Agent Meyer was clearly based on observations of petitioner's jacket and apparel that could only have been made after taking him into custody. (Hr'g Tr. 93.) In spite of Mr. Checkman's thorough cross-examination, the court concluded that Detective Johnson's testimony was credible because the court was not certain that Agent Meyer's report was "so effectively impeaching." (Id.)

Petitioner's argument that calling Agent Meyer as a witness would have been more effective than impeaching Detective Johnson with Agent Meyer's report is conclusory and speculative. Petitioner fails to explain how Agent Meyer's direct testimony could have contributed to weaken Detective Johnson's credibility. The only relevance of Agent Meyer's report was to show that Detective Johnson's earlier statement was inconsistent, in a minor way, with his testimony at the hearing. The court concludes that Mr. Checkman's failure to call Agent Meyer as a witness neither falls below the objective standard of reasonableness nor did it prejudice petitioner in any way. Thus, petitioner fails to satisfy either prong of Strickland on this claim.

In addition, petitioner argues that counsel's failure to call Ping Cen, an eyewitness who stated in her affidavit that the Nissan was parked legally, constitutes ineffective assistance. However, the court expressly did not based its determination that Detective Johnson had reasonable suspicion to stop and detain petitioner on the testimony that the Nissan was parked

8

illegally. In fact, the court clearly stated that Detective Johnson's observation of the Federal Express jacket and the flex cuffs, "put together with the circumstances as expressed in his testimony," was sufficient to find that he had reasonable suspicion that petitioner was involved in criminal activity. (Hr'g Tr. 106.) Given that the legality of the Nissan's parking in no way affected the outcome of the suppression motion, petitioner cannot establish that he was prejudiced by Mr. Checkman's decision not to call Ping Cen as a witness. Thus, even assuming that Mr. Checkman's decision was objectively unreasonable, petitioner has failed to establish the prejudice prong of Strickland on this claim.

Petitioner also argues that counsel's failure to investigate and subpoena various other witnesses to testify at the hearing constitutes ineffective assistance of counsel. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. Petitioner claims that calling Amy Lo, the undercover police officer, and Detective Kevin McIntyre to the stand would have contributed to Mr. Checkman's strategy, which was to establish that the police fabricated evidence to prove reasonable suspicion. Petitioner fails to even allege that there was any indication that these witnesses would have provided testimony inconsistent with Detective Johnson's testimony. Thus, the court cannot conclude that counsel's performance was objectively unreasonably. In fact, a review of the record suggests that trial counsel made a strategic decision to cross-examine Detective Johnson and impeach him with Agent Meyer's report, rather than open the door to further testimony from various police witnesses. Thus, petitioner's claims relate to counsel's tactical or strategic choices, which are "virtually unchallengeable." Id. at 690. In any event, in spite of his speculation to the contrary, petitioner cannot establish that but for counsel's alleged

9

error, the outcome of the case would have been different. Given that petitioner fails to satisfy both prongs of the <u>Strickland</u> inquiry, the court concludes that habeas relief is not warranted on here.

2.   Failure to Challenge Admissibility of Probation Letter on Fifth Amendment Grounds

Petitioner also claims that his trial counsel, Harry Batchelder, was ineffective for failing to object to the admissibility of his letter to his probation officer on the grounds that it violated his Fifth Amendment privilege against self-incrimination. As discussed in detail above, the record clearly demonstrated that petitioner—voluntarily and unprompted—wrote his probation officer concerning the facts and circumstances of his arrest. Given that petitioner's voluntary admission in no way implicates his Fifth Amendment privilege, the court cannot conclude that Mr. Batchelder acted unreasonably in failing to challenge the admissibility of the letter on those grounds. Moreover, petitioner cannot establish that he was prejudiced by the admission of the letter, in light of the uncontroverted evidence at the trial, including Detective Johnson's testimony, which established beyond a reasonable doubt that petitioner had previously been convicted of a felony and that he possessed a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

## CONCLUSION

For the foregoing reasons, the court denies the instant petition for a writ of habeas corpus. No certificate of appealability is granted with respect to any of the petitioner's claims, since the petitioner failed to make a substantial showing of any denial of his constitutional rights. The petitioner has a right to seek a certificate of appealability from the United States Court of Appeals for the Second Circuit. See 28 U.S.C. § 2253.

The Clerk of the Court is directed to enter judgment accordingly.

SO ORDERED.

Allyne R. Ross
United States District Judge

Dated: June 1, 2006
Brooklyn, New York

SERVICE LIST:

<u>*Pro Se* Petitioner</u>

Emilio Ramos
275 Cherry Street, Apt. # 18A
New York, NY 10002

<u>Respondent</u>

Eric Komittee
United States Attorney's Office
Eastern District of New York
One Pierrepont Plaza
Brooklyn, NY 11201